Our first case for the morning is Corey Welch v. Randall Hepp, 14-1164. We'll hear from Ms. Finelli. May it please the Court. Good morning, Your Honors. My name is Elisa Finelli. I'm a third-year law student at Notre Dame Law School, arguing here under the advisement of Attorney Bob Palmer. This Court has appointed us to represent the appellant, Mr. Corey Welch. Mr. Welch respectfully requests that this Court reverse the District Court's decision to deny his petition for the writ of habeas corpus. There are two issues before the Court today. One issue which this Court has certified. Whether Mr. Welch is entitled to habeas relief based on a violation of his right to a fair trial, when unduly prejudicial statements were admitted of his trial regarding his prior bad acts. And second, an issue which Mr. Welch requests this Court consider today, whether he is entitled to habeas relief based on a violation of his right to effective assistance of counsel when his trial counsel failed to request a mistrial based on the unduly prejudicial statements. Ms. Finelli, on the scope of the Certificate of Appealability, I'm a little concerned about, we certified one issue, you briefed two. You cited a case where we did allow that, but more recently we've been trying to discourage that practice. That is, if you, that is just briefing whatever you wanted. Certainly, Your Honor. In this case, the issues are very closely related. So in light of the Court's case in Uska v. Cahill mashing, which it stated that it will consider another issue if a petitioner makes a substantial showing of a violation of a constitutional right, and in light of the fact that these two issues are so closely related, we request that the Court consider the ineffective assistance of counsel issue. They're closely related because if Mr. Welch's right to due process was violated by the admission of these unduly prejudicial statements, which Mr. Welch argues, then certainly there is a substantial showing that his counsel was ineffective for failing to request a mistrial in light of those statements. Can you imagine circumstances where you might prevail on one of those theories but not the other? Your Honor, a decision, affirmative decision on either issue does not affect the other issue. There are certainly similar considerations to be made for each determination. However, if you fail to determine that his right to a fair trial was violated, that wouldn't preclude a finding that his counsel was ineffective. Turning to the fair trial issue in this case, the Wisconsin Court of Appeals unreasonably applied, clearly established federal law when it determined that his right to fair trial was not violated by the admission of the unduly prejudicial statements. It has clearly established federal law under Payne v. Tennessee that a defendant's 14th Amendment right to due process may be violated if evidence is admitted which is so unduly prejudicial that it renders the entire trial fundamentally unfair. The Wisconsin Court of Appeals unreasonably applied this law because it failed to consider the prejudice that resulted from the statements themselves and it failed to properly evaluate the strength of the remaining evidence against Mr. Welch. These two considerations are fundamental to a determination of whether or not evidence is so unduly prejudicial it renders the trial fundamentally unfair. When this court considers whether an evidentiary error is so great that it rises to the level of a due process violation, this court considers whether the unfair prejudice stemming from the error firmly convinces the court that the outcome of the trial would have been different but for that error. And in making that determination, this court considers the nature and the number of the errors, their interrelationship, how the trial court handled the errors, and the strength of the prosecution's case against the defendant. All four of those factors in this case weigh in favor of a violation of due process. Let me ask you this. Are those factors from our decisions or from the Supreme Court? Those are factors from this court's decision, specifically in Anderson v. Stearns and Alvarez v. Boyd. The court has used those factors. But in terms of the standard that we have to apply for habeas purposes, what's the best U.S. Supreme Court case for your side saying, in essence, that what happened here was so bad that the only possible remedy was a sua sponte mistrial? The Supreme Court case that establishes the clearly established law for this case, which should have been applied, is Payne v. Tennessee, which states that a defendant's 14th Amendment right may be violated if evidence is so unduly prejudicial that it renders the trial fundamentally unfair. That's pretty general. It is a broad constitutional principle that is laid out in Payne v. Tennessee, and the court did not provide a more specific guide or factors which should be considered. However, fundamental to a determination of whether or not evidence is so unduly prejudicial it renders a trial unfair would be a consideration of the error itself, the prejudice that results from that error, and the strength of the remaining evidence against the defendant. And the Wisconsin Court of Appeals failed to make that consideration. In its decision, it did a harmless error test, basically considered would the outcome of the trial have been different if the errors had not been made, which essentially could have been a correct application of the Payne principle. However, the court failed to consider the prejudice from the error itself, the harm from the error itself, and it improperly evaluated the remaining evidence by failing to take into account the significant weaknesses of the prosecution's evidence. Did these errors come up in the – you'll have to clear it for me because I don't recall. Did they come up in cross-examination? The statements were given by the State's witnesses when defense counsel was cross-examining the witnesses. He sort of pursued it a little bit. That's why I wondered. I guess that's how you're maybe even combining these two. Yes, Your Honor. Because he brought it out in his cross-examination. Your Honor, while this occurred during the cross-examination by defense counsel, the statements were not invited by defense counsel's questions. The questions did not call for any specific facts regarding Mr. Welch's prior criminal history. But they were stated by two law enforcement witnesses that the State had called. They were completely non-responsive to the questions and simply gratuitous statements about Mr. Welch's prior criminal acts. Should counsel have moved to strike or something? What would have been the alternative? Yes, and the lack of any curative action in response to those statements goes to the second issue of Mr. Welch's claim that his right to effective assistance was violated. It certainly goes to establishing the deficient performance under Strickland. In the Wisconsin Court of Appeals, in its determination of the ineffective assistance claim, it assumed Mr. Welch's counsel performed deficiently, which was a correct assumption, but it made an unreasonable application of the prejudice prong of Strickland. And that was an unreasonable application because it failed to properly consider the reasonable likelihood that a mistrial, in fact, would have been granted if one had been requested. Under Wisconsin law, the Court of Appeals ignored its own case law that when a motion for mistrial based on prior bad act statements is requested, it may be denied if a curative instruction is given. However, no curative instruction was given here. And the Wisconsin Court of Appeals, when it considered the prejudice resulting, the prejudice prong of the Strickland analysis, it failed to even consider whether a curative instruction was given. Well, it wasn't. Nobody asked for it, right? It was not. So did the judge react to this at all, to these evidentiary harpoons at all? The judge did stop testimony when Detective Herita made his statement about Mr. Welch having committed 11, 12 prior robberies. However, there was no instruction to the jury in response, no motion to strike or striking the statements themselves. There was a sidebar conference or what? The sidebar did ensue at that time, but effectively it only stopped the testimony. It did not do anything to cure what had already been stated, which in Detective Herita's statement was actually a false statement of Mr. Welch's prior crimes. Were these two harpoons launched by the officers ever referred to in closings or in any other testimony? The prosecution did not refer to the statements in closing. However, the prosecution did emphasize Detective Herita's statements and its importance in its case. And so Detective Herita's testimony was certainly referred to by the prosecution because it was important to their case. I'll reserve the remainder of my time for rebuttal if there's any questions. All right. Thank you, Ms. Fennell. Thank you, Your Honors. Mr. Wren, for the respondent. Thank you, Your Honor. My name is Christopher Wren. I'm an Assistant Attorney General with the Wisconsin Department of Justice, appearing on behalf of Respondent Randall Pepp. In our view, there is no due process argument here. The only claim that was properly before the district court was the ineffective assistance of trial counsel. Mr. Wren, the reply brief, you've raised this failure to exhaust defense in your brief. Yes. The reply brief quotes your answer in the district court. Is it quoted correctly? I agreed that he had exhausted his claim that the jury had been exposed to improper information. It didn't have anything to do with how that information came in or whether the trial court had any role in that. Our position is that he was denied his constitutional right to a fair trial when he was exposed to unfairly prejudicial information. That was his position. Yes. Right. And you think that is different? I think it's different from the claim that the trial court admitted the evidence. This evidence came in, as already been noted, in response to cross-examination questions. It becomes a due process issue only if the court had an obligation to intervene at some point. I understood that to be Petitioner's point, in essence. For that claim to work at all, it has to be that the judge had an obligation to intervene. Right. But that was never raised in the state court at all.  I admitted that the fair trial claim had been exhausted in terms of an exposure to the jury. That's what he claimed. I don't see that as the same thing as arguing, as claiming that the trial court admitted it, that the trial court committed error by admitting it. I frankly have trouble splitting hairs that finely. Well, our position is that the due process argument, as I said, was in effect the certificate of appealability brought in an issue that was simply not actually presented. Because of the way we phrased it? Well, I think so, yes. Had Mr. Welch brought this up directly in the state court in that way, I think the due process claim would have been fine. But he didn't bring it up that way. The only thing that came up in the state court was the ineffective assistance of the counsel claim. In Wisconsin, in order to bring the claim of the due process violation, he had to bring it up in the direct appeal. He never did. Once he got into the post-conviction proceeding, because he had not brought it up in direct appeal, he could only bring it up as a claim of ineffective assistance of counsel for failing to respond to this information that came in. And part of the problem with him responding to it was that his defense counsel elicited that information through the questioning. Well, let's talk about that a little bit. You've emphasized that point a good deal in your brief. Yes, Your Honor. These were experienced police officers, I gather. Yes. You don't get assigned to a case this serious without some experience, right? Right. And they're experienced as witnesses? Right. I assume, yes. I mean, all of us have seen plenty of police officer witnesses. And I've got to tell you, reading the transcript here, these look like non-responsive harpoons launched by police officers trying to take the opportunity. They weren't responsive to the questions. And I've seen police officers in my court and others who thought they could get away with this sort of thing. Here they apparently did. But the fact that this happened on defense questioning doesn't cut a lot of ice, frankly. Well, I think it makes a difference in the sense that once this improper information came forward, defense counsel proceeded with a follow-up question based on that information. It seems to me that what we assume under ineffective assistance of counsel is that counsel was proceeding as he wanted to proceed. When he asked the question, how did you come to approach Mr. Welch, the response was, well, I approached him because I knew about him and this is what I knew about him. I think that's a responsive answer. I can agree that Detective Huerta's answer wasn't necessarily fully responsive. But, again, defense counsel didn't make any motion and the judge intervened to keep it from going any further. Our position is that even assuming all this, that there was an allegation of a due process violation, that there was no prejudice that resulted from it because in the chart that I laid out and the Wisconsin Court of Appeals decision, summarizing the evidence that was available to show that there was no prejudice, what we see is that these few words would not have affected the jury's verdict. The jury had already heard from another witness that Mr. Welch had agreed, had confessed, had told them that he had committed 46 other robberies. That was one of his accomplices, right? That's correct. And the accomplice's testimony, the various accomplices' testimony, was corroborated by other evidence. I drew out in the brief, I explained the sequence relating to the revolver, which was supposed to be, which involved the question of whether Marcus, I forgot his name at this point, I'm sorry, but whether one of his colleagues who had testified at the previous trial had lied at the trial basically. The evidence that I laid out, the sequence in which they traced the revolver that was clearly used in one of the robberies to Mr. Welch, by itself would have been enough, I think, to overcome whatever prejudicial impact these statements would have had. We don't see, the real question here is whether the Wisconsin Court of Appeals reasonably or unreasonably applied Strickland v. Washington. We're going forward on the notion that there was a deficiency in the performance. What we're responding to is the notion that there was no prejudice that followed from it. And the only way that you could get prejudice is if those statements themselves would have mandated a mistrial or would have mandated a curative instruction. Our position is if defense counsel didn't want to do it, he didn't have to. In fact, in terms of the curative instruction, this court has speculated in OSCA that there's a good reason not to ask for a curative instruction because it would merely highlight the evidence. And in terms of mistrial, I think the Court of Appeals got it right and the district court correctly decided that by denying the motion, the post-conviction motion, the court itself was saying there would have been no mistrial granted. The same judge that oversaw this nine-day trial was the same judge that decided the post-conviction motion. He was in the best position to know whether, based on the testimony that he heard, the strength of the evidence, whether he would have granted a mistrial on either of them if defense counsel had raised it. Is there anything that – this is a question that actually was prompted by something in Petitioner's brief or reply brief, I don't remember which, but is there anything about Wisconsin procedure that would have prevented the judge from declaring a mistrial on his own? I don't know if there was anything that would have prevented it. You don't have to have a motion? I don't think so. I think if it's serious enough, I think the judge has an opportunity to intervene. But I think the judge, by not intervening in this case, except on – well, he intervened in the middle of the answer that Detective Werthe gave. There was no follow-up sidebar on that. There was a sidebar in relation to Officer Simmert's testimony, but that was prompted by the prosecutor intervening because he saw that the testimony was leading into another area that would be genuinely prejudicial, and that had to do with whether there were any gang affiliations with Mr. Welch. But in terms of the statement that Officer Simmert gave, which I respectfully disagree, I think that was responsive when the defense counsel asked, what was the reason that you approached Mr. Welch? And the officer said, this is why I approached him. And that, I think, was a responsive answer. Mr. Welch has never claimed at any point that these answers were nonresponsive. He has never claimed that the questions were improper themselves. So that's why we think it falls into the ineffective assistance of counsel area, not into the claim of due process, clear error, or however else you might want to characterize it. And that's largely because it was not raised on direct appeal, and once he came to his post-conviction collateral attack on the conviction, he could only raise this as a claim of ineffective assistance of trial counsel, post-conviction counsel, appellate counsel, however he wanted to characterize that, but only as an ineffective assistance of counsel claim. If the Court has no other questions, I conclude my argument. Thank you. Thank you very much, Mr. Wren. Ms. Fanelli, rebuttal. Your Honor, there's one point on rebuttal regarding the application of the Strickland prejudice prong. This was an unreasonable application of clearly established law by the Wisconsin Court of Appeals because it did not consider the reasonable probability that but for counsel's errors, the outcome would have been different. It did not properly consider that a mistrial would have been granted if one had been requested, and it also failed to consider the strength of the totality of the evidence. And under Strickland, this is necessary because of the- Could you respond to the point that Mr. Wren made, that the same judge had in front of him this question on the post-conviction process and apparently was not so troubled by what had happened that he threw out the result? Yes, Your Honor. In the Wisconsin Court of Appeals opinion, it in fact relies solely on the circuit court's denial on post-conviction of Mr. Welch's claim to state that, of course, they would not have granted a mistrial if one had been requested. However, that was unreasonable because the Court of Appeals itself states that the circuit court's decision on that appeal was not clear and perhaps was even a misrepresentation. The Court of Appeals ultimately says this was the right outcome, and we don't have to worry that it was perhaps an inaccurate representation because the circuit court's decision was so unclear as to what it was determining in its oral ruling. So it was unreasonable to rely on something that wasn't clearly deciding whether or not a mistrial would have been granted. And for the foregoing reasons, we request that you reverse the district court's decision. All right. Thank you very much, Ms. Finnelli. And the court thanks both you and Mr. Palmer for your efforts on behalf of your client and the service you've provided to the court, and thanks, of course, to Mr. Wren and the Office of the Attorney General as well. The case is taken under advisement.